**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JAMES D. SILVER, solely in his capacity as Receiver for NEXSTAR COMMUNICATIONS, LLC, et al.,**

        **Plaintiff,**

**-vs-**                                      **Case No. 6:07-cv-1670-Orl-31DAB**

**PAUL A. HOFFMAN,**

        **Defendant.**

## ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (Doc. 8)[1] and Plaintiff's Response thereto (Doc. 18).

**I. Background**

In a related action filed by the Securities and Exchange Commission ("the SEC")[2] on February 2, 2006, the SEC alleges that, beginning in November 2002, Edward S. Digges

---

[1] Defendant has filed a Memorandum of Law (Doc. 9) in support of his motion to dismiss as a separate document, in violation of Local Rule 3.01. The Court has decided not to strike this document, but Defendant is advised that future violations of the Local Rules may result in sanctions.

[2] *SEC v. Edward S. Digges, et al.*, Case No. 6:06-cv-137-Orl-31KRS ("the SEC Case"). In the SEC Case, Judge Fawsett entered an Order (Doc. 15) appointing James D. Silver as the Receiver for the Receivership Entities. The Receiver has since filed two ancillary actions to attempt to recover funds for defrauded investors: *Silver v. Digges, et al.*, 6:06-cv-290-Orl-31UAM and *Silver v. Hoffman*, 6:07-cv-1760-Orl-31DAB (the instant case).

("Digges") and others, through the Receivership Entities[3], perpetrated a fraudulent Ponzi scheme ("the Scheme") whereby investors purchased point-of-sale terminals from one of the Receivership Entities for $5,000 each and then leased the terminals back to another Receivership Entity. Under these "leaseback agreements" each investor was supposed to receive $50/month for 5 years. The leaseback agreement also required the Receivership Entity leasing the terminal to purchase it for $5,000 at the end of the lease. Hoffman is alleged to have been a member or officer of one or more of the Receivership Entities throughout the Scheme.

The Receivership Entities falsely represented to investors that their monthly lease payments were "assured" and that POSA, LLC maintained a six-month reserve fund for monthly lease payments. The Receivership Entities also falsely represented that they maintained a "Reserve Fund" or "Sinking Fund" to cover the cost of repurchasing terminals at the end of the lease terms. The investment program has run at a deficit since January 2004 and since June 2005 that deficit has been $125,000/month.

Throughout the Scheme, the Receivership Entities raised at least $20 million by selling approximately 4,000 terminals for $5,000/each. The terminals were only worth $600 each. Less than 900 of the terminals were actually placed with merchants and generated an average revenue of only $25 to $27/month. Some of the remaining terminals were placed, but inactive, and the remaining terminals were stored in a warehouse in Orlando.

---

[3]Nexstar Communications, LLC; TMT Equipment Company, LLC; TMT Management Group, LLC; POSA, LLC; POSA TMT, LLC; Televest Communications, LLC; Televest Group, LLC; and Spin Drift, LLC.

It is alleged that Hoffman was an active participant in the Scheme, and that he even corresponded with one investor personally. Hoffman received over $1.2 million in income from Spin Drift, LLC in 2003 and 2004, as well as another $625,000 either directly or indirectly from the Receivership entities. These profits are allegedly traceable back to the Scheme.

**II. Standard of Review**

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Plaintiff must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Bell Atlantic Corp. v. Twombly,* 550 U.S. __, 127 S. Ct. 1955, 1965 (2007). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.*

*for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id*. (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

**III. Legal Analysis**

*A. Subject Matter Jurisdiction*

The Receiver correctly alleges that this Court has supplemental jurisdiction over this case under 28 U.S.C. § 1367(a) ("§ 1367(a)") because it is an ancillary action to the SEC Case, over which this Court has federal question jurisdiction.[4] Defendant argues that the claims made in this case are not related to the claims in the SEC Case, as required by § 1367(a). However, aside from this single statement, Defendant makes no legitimate argument against subject matter jurisdiction.

---

[4]*See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981)(stating that "the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit. n6 As such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction. *Pope v. Louisville, New Albany & Chicago Ry. Co.,* 173 U.S. 573, 19 S. Ct. 500, 43 L. Ed. 814 (1899); *United States v. Franklin National Bank*, 512 F.2d 245 (2d Cir. 1975); *Roof v. Conway*, 133 F.2d 819 (6th Cir. 1943); Tcherepnin v. Franz, 485 F.2d 1251 (7th Cir. 1973); *S. E. C. v. Investors Security Corp*., 560 F.2d 561 (3rd Cir. 1977).")

As this Court noted above, Hoffman is alleged to have been an officer or member of one or more of the Receivership Entities throughout the Scheme. This action relates to the profits Hoffman received resulting from the Scheme. Therefore, this Court finds that supplemental jurisdiction is appropriate in this matter.

**B. Personal Jurisdiction**

"[T]he plaintiff, has the burden of establishing a prima facie case of personal jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Hoffman argues that this Court cannot exercise personal jurisdiction over him in this matter because the Receiver cannot meet the statutory requirements of Florida's long-arm statute, nor can the Receiver establish that Hoffman has sufficient minimum contacts with the state of Florida to satisfy due process. The Receiver, however, argues that because he was appointed by this Court as a receiver under a federal statute that provides for nationwide service of process, the Florida long-arm statute and the minimum contacts test articulated in *International Shoe*[5] do not apply.

> *International Shoe* has always been applied to the power of state courts, and federal courts sitting in diversity, to extend their process beyond the borders of the state in order to compel the presence of non-residents. The analysis has developed into a two-step approach where the court first determines whether a state long-arm service of process statute exists, and then determines whether compelling the defendants to appear pursuant to the long-arm comports with principles of due process. *See, e. g., Gatewood v. Fiat*, 199 U.S. App. D.C. 238, 617 F.2d 820 (D.C.Cir.1980); *Forsythe v. Overmyer*, 576 F.2d 779 (9th Cir. 1978), cert. den., 439 U.S. 864, 99 S. Ct. 188, 58 L. Ed. 2d 174; *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977). The second determination involves the minimum contacts test of *International Shoe*. An exhaustive search of decisions involving the federal receivership statutes reveals no case where a minimum contacts test was applied to non-resident defendants.

---

[5]*International Shoe v. State of Washington*, 326 U.S. 310 (1645).

---

> The reason for this dearth is quite simple. An ancillary receivership action does not involve an attempt by a state court or a federal court sitting in diversity to extend its power beyond its territorial limits through the use of a state long-arm service of process statute. The reason that a different analysis must be applied is two-fold. First, an ancillary receivership action is not an exercise of extra-territorial jurisdiction; and second, the territorial limits of the appointment court's effective service of process are extended to any district to which its territorial jurisdiction has been expanded by the presence in that district of property belonging to the receivership estate.

*Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822-23 (6th Cir. 1981).

Therefore, the Receiver need not demonstrate that Hoffman has minimum contacts with Florida, but instead need only show that Hoffman has "sufficient minimum contacts with the United States to satisfy the Fifth Amendment's due process requirements." *BankAtlantic v. Coast to Coast Contrs.*, 947 F. Supp. 480, 490 (S.D. Fla. 1996). As it is undisputed that Hoffman is a resident of the United States, this burden has been satisfied. *See id.*

*C. Count II: Fraudulent Transfer*

Count II alleges fraudulent transfer in violation of Florida's Uniform Fraudulent Transfer Act, Fla. Stat. § 726.105 ("FUFTA"), which states that:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>   (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
>   (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>     1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
>     2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105 (2007).

> FUFTA defines "creditor" as "a person who has a claim," and it defines "debtor" as "a person who is liable on a claim." Fla. Stat. § 726.102(4),(6). "Claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Fla. Stat. § 726.102(3). The Florida Supreme Court has noted that the statutory definition of "claim" is "broadly constructed" and "may be maintained even though 'contingent' and not yet reduced to judgment." *Friedman v. Heart Inst. of Port St. Lucie*, 863 So. 2d 189, 192 (Fla. 2003).
>
> "To utilize the protections of chapter 726 . . . a plaintiff must show that he or she has a 'claim' which qualifies the party as a 'creditor.'" *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004).

*In re Burton Wiand Receivership Cases*, 2007 U.S. Dist. LEXIS 22539, *10-11 (M.D. Fla. March 28, 2007).

Hoffman argues that the complaint fails to indicate which entities are alleged to be the "creditor(s)" or "debtor(s)" in this Count. In his response, Plaintiff argues that "the Receiver is the creditor, because, pursuant to the Order appointing the Receiver, he has a 'right to payment' of the funds fraudulently transferred on behalf of the Receivership Estate. In addition 'debtor is the party making the fraudulent transfer. It is clear from the Complaint that the Receivership Entities are the 'debtors.'" (Doc. 18 at 5). However, this Court finds that such allegations are not "clear" from the language of the complaint. Therefore, Count II will be dismissed.

*D. Count V: Improper Shareholder Distribution*

Count V alleges improper shareholder distribution in violation of Fla. Stat. § 607.06401(3). Defendant argues that this Count must be dismissed because the complaint fails to allege that any action took place in Florida. This argument fails because Plaintiff does make allegations that actions took place in Florida. (Doc. 1 at 4-5). Therefore, Count V will not be dismissed.

*E. Count I: Breach of Fiduciary Duty*

Defendant's arguments regarding this claim are completely without merit. It appears that Defendant has misconstrued Plaintiff's common law claim as some type of statutory claim. Therefore, these arguments will not be discussed herein and Count I will not be dismissed.

*F. Shotgun Pleading*

Finally, Defendant argues that this complaint is a "shotgun pleading", which is prohibited by Rule 8. This Court finds that this argument is also meritless.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss (Doc. 8) is **GRANTED** in part and **DENIED** in part. Count II of Plaintiff's Complaint is hereby **DISMISSED** without prejudice. Plaintiff shall have leave to file an Amended Complaint on or before January 17, 2007.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 19, 2007.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE